Tlie opinion of tlie Court was delivered by
Manning, J.
Tlie plaintiffs own three lots, Nos. 110, 112, and 114 St. Charles street, which have the same depth so that their rear lines form one straight line. The defendant owns a lot which fronts on North street, and is separated on the side from the rear of the plaintiffs’ lots by an alley four feet in width. The length of this alley is *1185 the matter iu controversy, the plaintiffs asserting that it extends from North street the entire rear line of their lots, and the entire side line of defendant’s lot, while the defendant maintains that it stops short of that distance. According- to the plaintiffs’ assertion it is seventy-four feet and a fraction in length. The defendant maintains it is fifty-six feet only. The plaintiffs claim a servitude and right of way upon and through the alley the full distance of the rear line of their lots, and the defendant resists it.
L. S. Parmly owned the defendant’s lot and others adjoining it iu 1846, and built upon them then, and opened an alley way along his side line. Ameron Ledoux owned the plaintiffs’ lots.
In April, 1847, Parmly sold to Ledoux for five hundred dollars the privilege and use of an alley having four feet in width fronting on North street, and running hack along the property of Ledoux to the rear line of said property, that is to say to the depth of about fifty-nine feet, which alley is intended shall be used in common by them, their heirs and assigns forever, the use of the same being purchased for the benefit of the property of Ledoux.
The words — that is to say to the depth of about fifty-nine feet — are not in the body of the Act, but were added at the close, and before it was signed, and it is not disputed, with the knowledge and assent of both parties.
At the time of this purchase the alley was open from North street to the depth or length of fifty-six feet, at which point there was a gate. This gate was put there by Parmly when he made the alley — was there when he sold the right of way to Ledoux — and has been there ever since. In other words the alley, as made or opened by Parmly, did not extend beyond this gate, and has not been extended beyond it at any time. There was never an opened alley way along the whole rear lino of the plaintiffs’ lots, but only to this gate. Ledoux lived twenty-three years after his purchase of the right of way and never made' claim to the use of an alley beyond the gate, this suit haviug been instituted by his widow and others deriving title from him in 1878.
The plaintiffs contend that the description in the Act of the property upon which the servitude was created constitute it a saleper averemiem, and that the specification of the boundaries controls the enumeration of quantity, and if there was error in the-latter there was and could be none in tbe former, and hence the alley must run back along the property of Ledoux to its rear line, and is not restricted to the depth of fifty-nine feet or thereabout.
There, cannot be any doubt as to wliat a sale per (wereionem is, as defined by writers, and explained and interpreted by judicial decisions. *1186 The only controversy here is whether this sale, in manner and form as already set forth, is within that definition. We do not think it is.
■ The description of the alley by boundaries in the Act, as drafted by the notary, extends it along Ledoux’ property to the rea.r line of .that property. The vendor evidently apprehended that such would or might be its construction. Both parties knew that in fact the alley did not extend that distance — was not opened along the whole of Ledoux’ property — but that it was terminated by a gate distant from North street somewhat more than fifty feet. The precise number of feet was not known or recollected. The actual distance we now know was fifty-six feet. The notary was directed to state at the end of the Act it was about fifty-nine feet, and it cannot reasonably be doubted that this care was taken to alter the description so as to negative the construction that the language, if unaltered, would justify. Ledoux so understood it, and acted on that understanding for near a quarter of a century.
. Servitudes are not susceptible of real delivery, and hence the use, which the owner of the estate to whom the servitude is granted makes of this right, supplies the place of delivery. Rev. Civ. Code, Art. 743. The use which Ledoux made of his right conforms to the enumeration of quantity in the Act, and shews that such enumeration was intended to control the specification of boundaries.
. -Ledoux’ object in the purchase of the servitude was the benefit of his property, and the manner in which he exercised his right shews its extent. Lot 114 has never had an opening into the alley. The other two have, and the obstructions complained of are in the rear of a portion of lot 110. There is a door, or gate in the rear wall of that lot abutting the alley, giving ingress and egress to and from the alley, which is neither hindei’ed nor obstructed by the gate across the alley. Construing the Act of purchase, as'restricted to “about fifty-nine feet” of alley way (fifty-six in fact) the purchaser has for the lot most-affected the benefit of a way which is.shewn by his own acquiescence, to have been of no greater extent than the quantity specifically stated in the Act.
It is argued by the plaintiffs that the defendant is estopped from denying that the alley extends the entire distance from North street to the rear line of their property, because of the description of his own property in his Act of purchase. :
West acquired from Parmly through mesne conveyances, and the description, after giving the number and dimensions of the lot, adds “between parallel lines, with the use of a privy in the rear, and the right of the alley leading thereto (which said privy is to be kept in order at the expense of the owners of lots one, two, and three) being a *1187 portion of the property,” etc. To comprehend this, it must he stated that Parmly’s property, as owned by him when he made the alley in 1846, was afterwards divided into three lots, and acquired by different persons, the defendant’s lot being No. 3. There was a privy built oh the rear part of No. 3 which was common to Nos. 1 and 2 — was for the use of the three lots. In selling one of .these lots, it was a necessary provision to give access to the privy, and therefore a right of way through the alley leading thereto was stipulated for lot No. 3 as against the owners of the'two other lots.
But that was Parmly’s affair, not Ledoux’. It was a stipulation to secure the owners of three lots into which Parmly’s property was divided in the use of a right common to all of them. The privy was to be kept in order by the owners of those three lots. If the owner of either of the other lots had prevented West from enjoying his easement, he could have set up his own title in vindication of his right to it.
But if West acquired such right from Parmly as against lots one and two, that does not enlarge the right which Ledoux acquired for a different purpose for his own lot on the opposite side of the alley. And besides, the stipulation of Parmly in favor of West may well he considered as referring to the passage way common to Parmly’s three lots.
The judgment of the lower Court was erroneous. Therefore,
It is ordered and decreed that the judgment of the lower court is avoided aDd reversed, and that there be now judgment in favor of the defendant James West against the plaintiffs herein, rejecting their demand, and that he have and recover of them his costs in the lower court and the costs of this appeal.
Rehearing refused.